**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| HALEY MACKRELL, *as the administrator of the Estate of Hakeem Williams, and* MYA TAYLOR MACKRELL, *as surviving daughter,* | ) ) ) ) ) | Civil Action No. 7:24-cv-7-HL |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ANGELA BUTLER, individually, | ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs hereby move the Court to sanction Defendant Angela Butler by striking her Answer for providing sworn responses to interrogatories that she knew were false, as to the central fact issues concerning her liability for the death of Hakeem Williams. Plaintiffs further move that the Court impose both monetary and non-monetary sanctions on non-party Georgia Department of Corrections for destroying the video evidence of the murder of Hakeem Williams. In support of this Motion, Plaintiffs show as follows:

### Relevant Facts

This action was filed on January 22, 2024 and concerns a violation of safety procedures at Valdosta State Prison, resulting in the death of Hakeem Williams. (Doc. 1.) The Complaint alleges that Defendant Angela Butler, while working as a

1

correctional officer, acted with deliberate indifference to Williams's fundamental right of personal safety when, in conscious disregard of applicable policies and her training, she placed the handcuffed Williams into a cell with a man named Jonathan Bivens while Bivens was uncuffed. (*Id.*, ¶¶ 9-21.) When she locked the cell door, Bivens took the opportunity to stab Williams in the chest with a prison-made knife, killing him. (*Id.*)

### A.   Defendant Butler's whole defense is based on perjury.

Defendant Butler, represented by the State of Georgia Department of Law, filed an Answer to the Complaint. (Doc. 2.) In her Answer, Defendant Butler denied that she "had actual subjective knowledge of the risk of violence that would result from leaving one incarcerated man in a cell cuffed and the other uncuffed." (*Compare* Doc. 1, ¶ 13, with Doc. 2, ¶ 13.) She denied that she "had been specifically trained on the risks of leaving one cuffed man in a cell with an uncuffed man, including the risk of serious bodily injury or death from violent attack." (*Compare* Doc. 1, ¶¶ 14-15, with Doc. 2, ¶¶ 14-15.) She denied that she knew there was a substantial problem with contraband knives in Valdosta State Prison. (*Compare* Doc. 1, ¶ 16, with Doc. 2, ¶ 16.) She denied having sufficient knowledge to admit or deny whether the prison was understaffed and whether inmates in the prison possessed shanks and knives. (*Compare* Doc. 1, ¶ 29, with Doc. 2, ¶ 29.)

Plaintiffs' Interrogatory No. 5 asked Butler to provide the factual basis for her defenses in this lawsuit. Def. Verif. Interr. Resp., p. 4 (attached as **Exhibit A** hereto). In her verified response served on April 29, 2024, Butler swore to the following account of the incident:

> When inmate Williams finished his shower, I handcuffed him in the same manner and then escorted him back to the cell that he occupied with inmate Bivens in the same manner. Then, with inmate Williams standing cuffed outside of the cell, I instructed inmate Bivens to come to the cell door to be cuffed. At that time, inmate Bivens placed his hands through the door flap, and I placed cuffs on inmate Bivens' hands. I then unlocked and opened the cell door and placed inmate Williams in the cell. **At that time both inmates were inside the locked cell with their hands cuffed behind their backs.** The normal process at that point is that the inmates must then take turns coming to the door to be uncuffed. I instructed inmate Williams to come to the door to be uncuffed first. Once inmate Williams was at the door to be uncuffed, inmate Bivens began attacking inmate Williams. **I did not know this at the time, but I believe that inmate Bivens somehow slipped out of his handcuffs.**

(*Id.*) Ms. Butler verified this response under penalty of perjury:

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have reviewed the foregoing interrogatory responses and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

This ___29___ day of _____April_____, 2024.



ANGELA BUTLER

*Id.*

Butler's response **was** perjury. In her deposition in this action on November 12, 2024, Ms. Butler admitted that she swore to a false story:

3

Q. You swore that this response was accurate. But it is not accurate. Is that right?
A: Correct.
**Q. It is false. Is that right?**
**A. Yes.**
Q. So you swore under oath that these false statements were actually true.
A. I thought they were true. Yes.
Q. Why did you think they were true?
A. 'Cause I had thought that I had did everything accordingly and I didn't.

Deposition of Angela Butler dated November 12, 2024 (**Exhibit B** hereto), p. 55:2-13. The video of this testimony is available here: https://bit.ly/butlerfalse. In her deposition, Ms. Butler testified that what really happened is that she locked Williams, who was cuffed, in the cell with Bivens, who was uncuffed. (**Exhibit B**, pp. 55:22-56:17.) After she locked the cell door, then Bivens attacked Williams. (*Id.*)

Ms. Butler testified under oath in her deposition that she "thought" her fabricated version of events was true. (**Exhibit B**, p. 55:9.) But that testimony is also a lie, because Ms. Butler knew quite well that she did not cuff Bivens. After the incident, Ms. Butler gave multiple written and recorded statements in which she recounted what really happened. Her repeated and detailed statements all **admitted** that she put Williams in the cell without cuffing Bivens, because she was the only guard in the whole building and **had only one pair of handcuffs**. She did not and could not cuff both men — one inside the cell and one outside — with one set of cuffs. Butler knew this and admitted it on multiple occasions before being sued.

4

### 1. Butler's statement to OPS admitted she locked the cuffed Williams in a cell with uncuffed Bivens.

Butler gave the first such statement, on the date of the incident, to Office of Professional Standards investigator Travis Sparks. Officer Sparks's investigative summary of the interview is designated herein as **Exhibit C**, but cannot be attached because GDC has designated it as confidential pursuant to the protective order that the Court has entered (Doc. 14). Pursuant to the protective order, Plaintiffs have requested consent from GDC to file the investigative summary.

In her contemporaneous statement, Ms. Butler told Officer Sparks that at the time of the incident she was the only correctional officer covering the J building, including areas J-1, J-2, and the Control Room. (**Exhibit C**.) She stated that she got Williams out of the shower and returned him to his cell in handcuffs. (*Id.*) Butler further told Officer Sparks that Bivens was in that cell uncuffed, because she had only one set of handcuffs. (*Id.*) She stated that her other set of cuffs was on an inmate whom she had escorted to a medical visit. (*Id.*) She told Officer Sparks that when she put Williams in the cell, Bivens was seated on the lower bunk, and he jumped up and started striking Williams. (*Id.*) She said that she secured the cell door and went to call for help. (*Id.*) This statement was made shortly after the incident, when Butler said she was still in shock from what she had witnessed. (*Id.*)

### 2.      Butler's handwritten statement to GDC admitted the same.

Butler gave another, handwritten statement a few weeks after the incident, on March 23, 2022. A copy of this statement is attached hereto as **Exhibit D**. This statement purports to be under oath and is generally consistent with the one that Butler gave to Officer Sparks on the date of the incident. (**Exhibit D**.) In the March 23 handwritten statement, Ms. Butler described the incident as follows:

> On Feb 28 I was working J Building, alone and giving showers alone to all inmates. I was in the process of getting inmates in Room #37 out of the shower. My Unit Manager, Lt. Morrison instructed me to get inmate in #16 out of room to take him over to her in K Building. I obliged and upon returning to J Building with 1 one pair of handcuffs I returned Inmate Williams to cell and didn't cuff 1095 Bivens. Inmate Bivens jumped up off bed and attacked Williams, resulting in his death.

(*Id.*) This statement was produced by the Georgia Department of Law as part of Butler's Department of Corrections personnel file.

### 3.      Butler received a written reprimand for locking Willims in a cell with an uncuffed Bivens, and causing his death.

The next page of Butler's personnel file is a written reprimand from the Southwest Regional Supervisor of the Department of Corrections, dated March 30, 2022. This document is attached hereto as **Exhibit E**. The reprimand states that Butler "created a dangerous situation" and violated Standard Operating Procedures by placing Williams in the cell without cuffing Bivens, resulting in Williams's death. (**Exhibit E.**) On April 20, 2022, Butler signed this reprimand to acknowledge that she received it. (*Id.*; Butler Dep., pp. 65:13-66:20.) Butler testified that the Warden

6

met with her personally to issue the reprimand. (Butler Dep., p. 66:18-24.) This was the first of only two reprimands that Butler received while working for the Department of Corrections. (*Id.*, p. 102:10-13.) The second reprimand, for cursing at an inmate, got her fired. (*Id.*, pp. 98:21-99:6.)

**4.  Defense counsel possessed Butler's prior sworn statements when they served her perjured responses, and defense counsel has never withdrawn the perjured responses.**

Butler is represented in this action by the State of Georgia Department of Law. (Doc. 5.) On March 25, 2024, Plaintiffs served their Initial Disclosures with a link to a production of documents, including a copy of Butler's GDC personnel file.[1] (**Exhibit F.**) As shown above, this file contains Butler's sworn admissions and other evidence that Butler did not cuff Bivens because she only had one set of cuffs. Regardless, defense counsel served the perjured interrogatory responses thirty-five days later on April 29, 2024. (**Exhibit A**.) After that, in a response to interrogatories served on August 15, 2024, Plaintiffs expressly called defense counsel's attention to the fact that Butler had given written, sworn statements admitting that she did not

---

[1]    Of course, the Department of Law also represents GDC, so Defendant's lawyers already had constructive possession of the personnel file. However, in a move reminiscent of a Franz Kafka novel, the Department of Law told Plaintiffs that it did not have access to GDC documents and required Plaintiffs to request them by serving a subpoena on GDC's attorneys at the Department of Law. (*See*, *e.g.*, Doc. 13.) Defendant Butler has produced no documents in discovery.

cuff Bivens because she only had one set of cuffs. (**Exhibit G**.) Defense counsel has never supplemented, withdrawn, or amended the perjured responses.

>    **B.**    **The Georgia Department of Corrections admits that it destroyed crucial video evidence of the murder of Hakeem Williams without providing it to any outside investigating agency.**

The murder of Hakeem Williams was captured on prison security video, which GDC personnel reviewed on the date of the incident. (*See* **Ex. H** (sworn statement of Defendant Butler, stating that "[t]he video was reviewed and Offender Williams was assaulted by Bivens after he was returned to his cell from shower"); **Ex. I** (GDC Investigative Summary, showing that Officer Sparks and Deputy Warden Ralph Shropshire viewed the security video on the date of the murder.).[2]

On March 9, 2022, less than ten days after the murder, Plaintiffs sent a letter of representation and preservation notice to Warden Shawn Emmons and to GDC Commissioner Timothy Ward, requiring GDC to preserve all relevant evidence, specifically including video evidence. (**Ex. J** (preservation notice sent to GDC by Plaintiffs' counsel).) The notice was sent by fax and email to ensure immediate receipt. *Id.*

GDC admits that after viewing this direct evidence of the murder, its deputy warden and investigator did not download or otherwise preserve the video and did

---

[2]    Like **Exhibit C**, **Exhibit I** has been designated as confidential by GDC. Plaintiffs have requested that GDC consent to the filing of this exhibit.

not provide it to the District Attorney for use in the murder prosecution. **Ex. K** (email from GDC counsel Susan Rutherford to Plaintiffs' counsel, dated November 21, 2024.) Instead, GDC allowed the only copy of the video to be overwritten and lost. *Id.*

This is far from an isolated incident: GDC regularly fails to preserve video in inmate death and serious injury cases. (*See* **Exhibits L[3], M[4], and N[5]** (discovery responses from GDC showing that video was not preserved in such cases.)) The recent United States Department of Justice report identifying constitutional deficiencies in Georgia prisons noted that it is common for GDC investigators not to adequately review video evidence. https://www.justice.gov/usao-ndga/media/1371541/dl?inline (last viewed Dec. 19, 2024), p. 66. The DOJ Report

---

[3] **Exhibit L** is a non-party subpoena response from GDC in the case of *Munoz v. Askew*, Civil Action 3:22-cv-175-DHB-BKE, pending in the SDGA, wherein GDC admits that no video footage was preserved after an hours long in-cell murder at Johnson State Prison. (*See* Subpoena response to Request No. 6).

[4] **Exhibit M** is a discovery response from GDC in the case of *Loyal v. GDC*, Civil Action 1:22-cv-84-JRH-BKE, which was brought in the SDGA, wherein GDC admits that no video footage was preserved as Thomas Giles died from smoke inhalation, after being trapped inside his cell for over three hours during a fire at Augusta State Medical Prison, and after officials rescued other neighboring men, but not Giles.  (*See* Discovery response to Request No.  5).

[5] **Exhibit N** is a discovery response from GDC in the case of *Pearson-Tucker, as administrator of Estate of Clinton Jackson v. Wellpath LLC, et. al*., Civil Action 5:24-cv-215-CAR, pending in MDGA, wherein GDC admits no video footage was located after a suicide at Macon State Prison, when Clinton Jackson was left unmonitored after he threatened self-harm. (*See* Discovery response to Request No. 4).

recommended, as a minimum standard to ensure constitutional conditions of confinement, that "[a]ll video footage should be retained for 90 days unless an assault on an incarcerated person or staff or other incident occurs in an area surveilled, in which case the video should be preserved until the matter is fully investigated and prosecuted or dismissed by authority of the Commissioner." *Id.*, p. 83.

## ARGUMENT AND CITATION TO AUTHORITY

### A.    This Court should strike Butler's Answer.

Under applicable law, the appropriate sanction for Butler's perjury, and for her failure to supplement, amend, or withdraw her perjured responses, is to strike her Answer. Plaintiffs also ask that this Court impose monetary sanctions against Butler sufficient to compensate Plaintiffs for the expenses and attorneys' fees required to investigate Butler's misconduct, prepare this Motion, and obtain relief from the Court through any hearing or other related proceedings.

### 1.    Applicable law provides for sanctions, including default, for misconduct such as intentional falsehoods in discovery.

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. *Chambers v. Nasco*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see also Roadway Express v. Piper*, 447 U.S. 752, 765 (1980) (recognizing "the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive

10

litigation practices") (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962)). Included among these inherent powers is the "broad discretion of the district court to impose sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944-945 (11th Cir. Ga. 2005).

As the Supreme Court has held, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *NHL v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). Thus, "the inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence." *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007).

In addition to the inherent power of the Court to impose sanctions for discovery abuse, Rule 37(c)(1)(C) specifically authorizes sanctions, up to and including default, for a party's failure to disclose, to supplement a previous response, or to admit facts when requested to do so. The baseline sanction for simple failure to disclose is preclusion: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Of course, deliberate perjury is far more egregious than merely "fail[ing] to provide information." As one district court persuasively put the point:

> when a party falsely testifies to a fact material to the substance of a litigation, such is anathema to the function of the courts. Perjury is much more than simply a 'gotcha,' harmful in effect only for the reason that one got caught. Litigation is not a game in which perjury warrants a five-yard penalty for a minor untruth, fifteen yards if the perjury was really serious. Rather, perjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth-seeking process.

*Arnold v. Cnty. of El Dorado*, No. 2:10-cv-3119 KJM GGH PS, 2012 U.S. Dist. LEXIS 112398, at *13-14 (E.D. Cal. Aug. 8, 2012).

While perjury on any material issue justifies significant sanctions, "the need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case." *Qantum Communs. Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007). Thus, "[w]hen a party . . . provides false evidence relating to a key issue in a case, courts have made clear that the appropriate sanction is the ultimate sanction . . .." *Access Innovators, LLC v. Usha Martin, LLC*, No. 1:09-cv-2893, 2010 U.S. Dist. LEXIS 152303, at *9 (N.D. Ga. Apr. 28, 2010); *see also Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 U.S. Dist. LEXIS 81449, at *29 (N.D. Ala. May 8, 2020) (same).

### 2. Butler's misconduct justifies the sanction of default.

Before imposing a case-dispositive sanction, the Court is required to consider whether lesser sanctions would serve as a sufficient remedy, deterrent, and

12

punishment for the relevant misconduct. *Gratton v. Great Am. Communs.*, 178 F.3d 1373, 1374-1375 (11th Cir. 1999). However, "[w]hen lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea*, 987 F.2d at 1544. On the facts presented here, no lesser sanction would sufficiently address the culpability of Plaintiff's conduct or the resulting prejudice to Defendant. This Court can and should dismiss Plaintiff's claims.

Numerous courts have held that perjury justifies case-dispositive sanctions. *See Chamberlain v. Les Schwab Tire Ctr. of Cal., Inc.*, 2012 U.S. Dist. LEXIS 171325, \*8 (E.D. Cal. Nov. 30, 2012) ("Dismissal is an appropriate sanction for perjury because committing perjury is tantamount to acting in bad faith."); *Arnold v. County of El Dorado*, 2012 U.S. Dist. LEXIS 112398, \*12-14 (E.D. Cal. Aug. 8, 2012) ("Clearly, committing perjury is acting in 'bad faith.'").

> Litigation is not a game in which perjury warrants a five yard penalty for a minor untruth, fifteen yards if the perjury was really serious. Rather, perjury on any material fact strikes at the core of the judicial function and warrants a dismissal of one's right to participate at all in the truth seeking process. If one can be punished for perjury with up to

> five years imprisonment, 18 U.S.C. § 1621, it should not seem out of place that a civil action might be dismissed for the same conduct.

*Arnold v. County of El Dorado*, 2012 U.S. Dist. LEXIS 112398, *12-14 (E.D. Cal. Aug. 8, 2012).

As a District Court in New York observed: "If refusal to answer questions can justify [a dispositive sanction], then surely deliberately answering questions falsely should suffice." *Miller v. Time-Warner Communs., Inc.*, 1999 U.S. Dist. LEXIS 14512, *9 (S.D.N.Y. Sept. 22, 1999) (imposing sanction of dismissal on plaintiff who had erased her handwritten notes from discovery documents and testified falsely about the erasures, even without prejudice to the opposing party).

Butler's willingness to lie under oath demonstrates that she is not likely to be deterred from future misconduct by a lesser sanction such as an adverse instruction. *See Arista Records*, 241 F.R.D. at 465 ("One who anticipates that compliance with discovery rules and the resulting production of damning evidence will produce an adverse judgment, will not likely be deterred . . . by any sanction less than the adverse judgment she is tempted to thus evade.")). It is undisputed that Butler swore to a false interrogatory response on the central issue in the case. The response was not merely sloppy or inaccurate. It told a factually detailed story in which Butler's actions exactly tracked the requirements GDC's safety policy. But the story was a

14

fabrication. The truth was that Butler did not and could not have complied with that policy.

Butler's testimony that she "thought" she did everything according to policy is clearly just an effort to cover up one falsehood with another. There is no way she forgot what really happened. Both on the date of the incident and again several weeks later, Butler gave sworn statements admitting that she did not cuff Bivens because she only had one set of cuffs. She received a written reprimand for this policy violation. The Warden met with her personally to issue that reprimand. She signed the reprimand to acknowledge that she received it. That was the first time she had been reprimanded; the next time, she got fired. She did not forget this.

Butler also failed to correct her false interrogatory responses, which she was required to do. Federal Rule of Civil Procedure 26(e) provides:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . ..

Butler knew that her perjured responses were false when she served them in April, 2024. The responses do not concern ancillary facts that she may or may not have retained, but instead concern her own actions, which resulted in a man's violent death. She recounted those actions under oath in several written statements and was

15

reprimanded for them by GDC. The version of events contained in Butler's responses self-servingly altered even the most basic facts, such as whether Bivens was handcuffed and how many pairs of handcuffs Butler had at the time. It also left out an entire section of the story, in which Butler transported an inmate to medical while Williams was showering, leaving her only one set of cuffs. And Plaintiffs' initial disclosures provided defense counsel with Butler's prior true statements of the facts in March, 2024, more than a month **before** the false responses.

If that were not enough, in discovery responses served on August 15, 2024, Plaintiffs specifically confronted defense counsel with Butler's sworn statements that contradicted her interrogatory responses. (**Ex. H.**) At issue here are not minor factual misstatements, but two contradictory accounts of the events at the heart of the case. But despite all this, Butler never corrected her responses. She let her lies remain on the record for nearly **eight months**, until she finally admitted in her deposition that they were false. Default is an appropriate sanction for Defendant's willful misconduct. *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1021 (8th Cir. 1999) ("as these statements were made under oath, they are a direct affront to the court").

Of course, Plaintiffs now know the truth. But that is always true in these situations; perjury cannot be sanctioned unless it is discovered. If the discovery of the truth absolved the offending party, then perjury would never be sanctioned. Nor is it helpful that Butler can be impeached. "Impeachment has little punitive or

16

deterrent effect for obstructive discovery tactics or perjury." *Dotson v. Bravo*, 202 F.R.D. 559, 575 (N.D. Ill. 2001). Impeaching her can help prove the facts, but the facts should have been admitted anyway. Instead, Butler falsely denied them and fabricated a self-serving story in an effort to avoid accountability. She should not just be put back in the same position that she would have been in if she had told the truth. Only the sanction of default adequately addresses her misconduct.

**B.    GDC should be sanctioned for destroying video evidence of the murder.**

Numerous federal courts have imposed significant sanctions on parties who willfully spoliate evidence, including electronically stored information, at a point when litigation is or should be anticipated. *See Taylor v. Mitre Corp*., 2012 U.S. Dist. LEXIS 163854, *30-32 (E.D. Va. Sept. 10, 2012) (recommending dismissal with prejudice where plaintiff willfully destroyed computer data, including emails, before filing suit against his former employer); *Gutman v. Klein*, 2008 U.S. Dist. LEXIS 92398, *40-41 (E.D.N.Y. Oct. 15, 2008) (imposing default judgment on defendants who spoliated computer evidence); *Ameriwood Indus., Inc. v. Liberman*, 2007 U.S. Dist. LEXIS 74886, *1 (E.D. Mo. July, 3, 2007) (entering default judgment and awarding fees and costs as a sanction for intentional erasure of computer data); *Leon v. IDX Sys. Corp*., 2004 U.S. Dist. LEXIS 31361, *16 (W.D. Wash. Sept. 30, 2004) (dismissing employee's retaliation claim as a sanction for willful destruction of potentially relevant computer files); *Arista Records, L.L.C. v.*

17

*Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) (imposing default judgment on copyright defendant who deleted potentially relevant evidence from her computer hard drive).

If a non-party is shown to (1) have a substantial interest in the outcome of the litigation and (2) have substantially participated in the proceedings, then a court has authority to impose sanctions for bad faith. *Sciarettta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015) (imposing $850,000 sanctions award against non-party for bad-faith conduct in the litigation). Both are true here. GDC has participated substantially in the litigation, because Defendant Butler has produced no documents at all and claims that only GDC has custody of all evidence. Butler and GDC are both represented by the same law firm, namely the Department of Law. And GDC plainly has a substantial interest in the outcome of a lawsuit against one of its correctional officers arising out of a murder in one of its prisons.

GDC's spoliation here gives rise to an inference of bad faith. Even without a known incident, State policy required GDC to retain security video for 30 days. https://www.georgiaarchives.org/records/state_government/schedules/69 (Policy No. GASC-07-021, last viewed December 19, 2024). Here, GDC viewed the video on the date of the incident and knew that it contained **evidence of a homicide**. That fact alone would require the record to be maintained "until settlement of claims." (*Id.*) Within ten days of the incident, GDC had been directed by Plaintiffs' counsel

to preserve evidence and had actual knowledge that there was a potential civil claim. Yet even with that notice, and knowing that the video contained evidence that might be needed in a murder prosecution, GDC did not preserve the video.

If this Court does not sanction GDC simply because it is a non-party, then this will be one more case in which the agency destroys, with impunity, evidence that it knows to be relevant to the death of an incarcerated person. Such callous disregard for the processes of justice that provide accountability for loss of life should not be tolerated or condoned. The Court should impose monetary sanctions in an amount sufficient to deter GDC from continuing such misconduct and to remedy the prejudice to Plaintiff's case. In addition, the Court should impose the non-monetary sanction of informing the jury that GDC reviewed the video and had a legal obligation to preserve it, but instead destroyed it. This instruction is necessary to explain the video's absence to the jury and to negate the incentive that GDC otherwise has to destroy video evidence of its employees' culpability.

## Conclusion

For the foregoing reasons, this Court should (1) strike Defendant Butler's Answer; (2) impose a significant monetary sanction against the Georgia Department of Corrections for its willful spoliation of the video evidence of the murder of

19

Hakeem Williams; and (3) inform the jury at trial that GDC reviewed the video and had a legal obligation to preserve it, but instead destroyed it.

This 20th day of December, 2024.

/s/ Samantha Funt
Samantha J. Funt
Georgia Bar No. 943783
Zack Greenamyre
Georgia Bar No. 293002

MITCHELL, SHAPIRO, GREENAMYRE & FUNT, LLP
881 Piedmont Ave NE
Atlanta, GA 30309
404-812-4751
404-812-4740 (fax)
zack@mitchellshapiro.com
sam@mitchellshapiro.com

/s/ Leighton Moore
Leighton Moore
Georgia Bar No. 520701

THE MOORE LAW FIRM PC
1819 Peachtree Street NE, Suite 403
Atlanta, GA 30309
(404) 285-5724
leighton@moorefirmpc.com

20

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing *Plaintiff's Motion for Sanctions* with the

Clerk of Court via Odyssey eFileGA which will automatically send e-mail notice of

the filing via e-mail to all counsel of record.

I have also served this document by United States First Class Mail and email

upon the following counsel for the Georgia Department of Corrections:

> Elizabeth M. Crowder
> Susan Rutherford
> Office of the Attorney General Chris Carr
> 40 Capitol Square S.W.
> Atlanta, Georgia 30334
> ecrowder@law.ga.gov
> srutherford@law.ga.gov

This 20th day of December, 2024.


> /s/ Samantha Funt
> Samantha Funt
> Georgia Bar No. 943783

21