**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| HALEY MACKRELL, *as parent of* | ) | |
| M.T.M., *surviving child of* | ) | |
| HAKEEM WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 7:24-CV-00007-LAG |
| ANGELA BUTLER, individually, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BUTLER'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**

Defendant Angela Butler, through counsel, hereby submits this response in opposition to Plaintiff's Motion for Sanctions, against Defendant Butler (Doc. 18). As shown herein, Plaintiff's motion does not show that Defendant committed perjury (she did not) or that sanctions are warranted (they are not). Defendant asks that the motion be denied.

**A. Factual Background**

On January 1, 2024, Plaintiff Haley Mackrell, as parent of M.T.M, surviving child of former inmate Hakeem Williams, ("Inmate Williams"), filed her complaint asserting a deliberate indifference claim against Defendant, in her individual capacity, under 42 U.S.C. § 1983. (Doc. 1). Plaintiff asserted that Inmate Williams was murdered at Valdosta State Prison, as a proximate result of the deliberate indifference of Correctional Officer Angela Butler. (Doc. 1, p. 1). Defendant filed her Answer on February 19, 2024. (Doc. 3). On March 25, 2024 the parties exchanged Initial Disclosures and discovery commenced. Plaintiff served written Initial Disclosures, (*See* Doc. 18-5), and produced a number of documents. While Plaintiff's Initial Disclosures did contain a version of Defendant's personnel file, this version did not include

- 1 -

Defendant's handwritten GDC witness statements from 2022—one page that might be a statement, is fully redacted for institutional security. *See* Exhibit A generally; p. 27. Defendant served only written Initial Disclosures and produced no documents because documents pertaining to the incident were in the possession of the Georgia Department of Corrections ("GDC").

Defendant served discovery requests—First Interrogatories and Request for Production of Documents—on Plaintiff, on March 25, 2024. On March 29, 2024, Plaintiff served a Non-Party subpoena, requesting records directly from the GDC. This subpoena was served prior to Plaintiff then serving discovery requests—Interrogatories and Requests for Production—on Defendant, later that same day.[1] Plaintiff's production request to Defendant was nearly identical to that served to GDC. Undersigned counsel was assigned this case on April 3, 2024. The GDC served its written response on April 26, 2024, and produced documents beginning on April 30, 2024, and concluding on June 27, 2024, pursuant to a joint motion for protective order (Doc. 13). GDC's initial production contained a number of documents, including Defendant Butler's handwritten GDC witness statements, (Doc. 18-3, 18-7), and GDC's final production included Defendant's recorded oral statement to OPS and a typed summary thereof. (Doc. 18-2, Exhibit C-subject to protective order).

---

[1] Plaintiff's motion suggests in a footnote that it is improper for Defendant Butler to have legal counsel representing her in this action that is separate from the legal counsel representing the GDC, the State agency that formerly employed her and that is the record custodian for essentially all of the records that pertain to this case. To be clear, the undersigned counsel of record in this case are counsel for Defendant Butler. GDC has separate counsel who represents it and who has represented it in connection with third party discovery in this case. There is nothing improper, or as the motion suggests Kafkaesque, about this fact. And Plaintiff's counsel were fully aware of the separate representations because as stated they served a subpoena directly on GDC. Plaintiff's motion rests on the serious and reckless allegation that a litigant and her counsel falsely presented facts in the case because undersigned counsel had access to and had actually reviewed the GDC records, including Defendant's 2022 written witness statements and her recorded interview, before the interrogatory response in issue was given. The allegation is wrong, it is denied completely, and it is made without evidentiary support and so is not proved in the motion.

Defendant served her written responses to Plaintiff's discovery requests on April 29, 2024. Defendant Butler responded that she had no documents to produce and referred Plaintiff to the GDC. (Doc. 18-1). Undersigned, on behalf of Defendant Butler, also awaited the GDC subpoena production. Thus, at the time when Defendant served written responses, neither undersigned counsel (and to be clear, this means none of the undersigned counsel) nor Defendant had reviewed GDC documents.

Defendant served additional discovery requests—Second Interrogatories and First Requests for Admissions—to Plaintiff on June 3, 2024. Plaintiff served written responses on August 15, 2024, referring, where applicable, to Defendant's handwritten GDC witness statements and Defendant's recorded oral statement to OPS. (Doc. 18-6). Plaintiff began efforts in June, to depose Defendant in July. Scheduling did not permit. Then in the month of July, undersigned experienced unexpected family bereavement, so requested and was granted leave of Plaintiff in the scheduling of Defendant's deposition. Thereafter in September, Defendant agreed to Plaintiff's request to extend the discovery period, which resulted in an extension until November 25, 2024. (Doc. 16, 17). Thereafter, after other scheduling conflicts for both parties, Plaintiff was ultimately deposed on November 12, 2024, at which time Plaintiff thoroughly examined Defendant. With Defendant's testimony on record, six days later on November 18, 2024, Plaintiff sent a 30-day letter demanding $6.5 million dollars, claiming that Defendant had lied and that meant she was liable for Inmate Williams' death.

Plaintiff has now moved for sanctions, initially asking the Court to strike Defendant's Answer for "providing sworn responses to interrogatories that she knew were false, as to the central fact issues concerning her liability for the death of Hakeem Williams," (Doc. 18, pp. 1, 10), but

arguing that a default judgment be sanctioned against Defendant. (Doc. 18, pp. 10-17). But Plaintiff's motion lacks merit and should be denied.

### B. Plaintiff Has Not Shown Perjury or that Defendant Breached her Duty to Supplement

Plaintiff's motion raises serious allegations of misconduct and perjury, which lack foundation or evidentiary basis. And Plaintiff has not demonstrated that sanctions are warranted. Plaintiff begins by alleging that Defendant's Answer responses were lies. Specifically, Plaintiff points to Defendant's denial of the allegations that she: "had actual subjective knowledge of the risk of violence that would result from leaving one incarcerated man in a cell cuffed and the other uncuffed," (*Compare* Doc. 1, ¶ 14, with Doc. 2, ¶ 14), "had been specifically trained on the risks of leaving one cuffed man in a cell with an uncuffed man, including the risk of serious bodily injury or death from violent attack," (*Compare* Doc. 1, ¶ 15, with Doc. 2, ¶ 15), knew there was a substantial problem with contraband knives in Valdosta State Prison, (*Compare* Doc. 1, ¶ 16, with Doc. 2, ¶ 16), and had insufficient knowledge to admit or deny "whether the prison was understaffed and whether inmates in the prison possessed shanks and knives." (*Compare* Doc. 1, ¶ 29, with Doc. 2, ¶ 29). But Plaintiff offers no support for her contention that these denials are false, other than claiming that Defendant's interrogatory response was a lie. But Defendant's interrogatory response did not address these allegations or Defendant's responses thereto. Moreover, during deposition, Defendant testified to knowing that contraband weapons were present at VSP, (Doc. 18-2, pp. 32-35); gave her opinion about perceived staffing deficiencies, (Doc. 18-2, p. 42); discussed having been trained on handcuffing both inmates when cell doors were opened, (Doc. 18-2, pp. 51-53); and agreed with the basic notion that locking a cuffed inmate inside a cell with an uncuffed inmate (notably, "locking or leaving" an uncuffed inmate in a cell with a cuffed inmate is not what occurred in this case) could create a dangerous situation, (Doc.

18-2, p. 52). None of this testimony was in contradiction to Defendant's Answer responses. None of this testimony went so far as Plaintiff's Complaint allegations, which were compound, poorly worded, and often legal conclusions masquerading as fact allegations. Defendant's denials were not false responses, and Plaintiff has not shown them to be.

Defendant declared, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the facts stated in her interrogatory responses were "true and correct to the best of my knowledge, information, and belief." (Doc. 18-1, p. 10). A penalty for perjury involves making a statement that one "does not believe to be true" and willfully under oath. 18 U.S.C. § 1621. To qualify as perjury, the testimony must be "given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *United States v. Cavallo*, 790 F.3d 1202, 1220 (11th Cir. 2015) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1277 n. 34 (11th Cir. 2008)). Defendant did not lie or intend to mislead in her interrogatory response; rather, she incorrectly recalled what had occurred based on how shower escorts normally occur. She believed that what she subscribed as true, was in fact true. In deposition, Defendant testified:

> Q. …you swore that this response was accurate but it is not accurate. Is that right?
> A: Correct.
> Q. It is false. Is that right?
> A. Yes.
> Q. So you swore under oath that these false statements were actually true?
> A. I thought they were true. Yes.
> Q. Why did you think they were true?
> A. Because I had thought that I had did everything accordingly, and I didn't. I had completely forgot about everything. I had just through [sic] it out my mind.
> Q. So now you remember?
> A. Yes.
> Q. What made you remember?
> A. A statement that Shelley sent to me.

Deposition of Angela Butler dated November 12, 2024. (Doc. 18-2, p. 56).

> Q. So did you come up with this story?
> A. Well, no. That's my story, yes.

Q. Okay.  So that wasn't proposed to you by your lawyer?
A. No.  No.
Q. So you came up with that lie, told your lawyer, and she wrote it into this document.
A. It's not a lie.  When I said it, it's the reality of what I thought actually happened.  So I can't call it a lie.  I  mean --

Deposition of Angela Butler dated November 12, 2024.  (Doc. 18-2, p. 59).

Plaintiff has not shown that Defendant thinking her interrogatory response was true, was a lie.  Yes, Defendant had given previous statements detailing the shower escort differently than she detailed it in her interrogatory response, but this does not support Plaintiff's contention.  Defendant testified in her deposition that after interviewing with OPS on the day of the incident (February 28, 2022) and then writing her statement one month after the incident (March 23, 2022), in the two years since, she had not made a habit of discussing the incident and had made efforts to not think of it because of its traumatic nature.  (Doc. 18-2, pp. 56, 127-128, 141-142).  Defendant testified that quite frankly, she fixed in her mind that she had conducted the escort in the usual manner.  (Doc. 18-2, p. 56).  Although Defendant was reprimanded, that reprimand was rescinded, (Doc. 18-4), and although a pay reduction was *proposed* as an adverse action, Defendant never saw a pay reduction.  (Doc. 18-2, p. 103).  These things coincided with Defendant's belief that she had conducted the escort in the usual manner.  And Defendant testified that she had not reviewed any materials in preparation for her discovery responses to refresh herself on what had transpired.  (Doc. 18-2, pp. 141-142).  Thus, Defendant responded to interrogatories, based solely on her then-present knowledge and recollection, not based on a review of any documents.

What Defendant fixed in her mind was incorrect.  But Defendant testified that once presented with her written statement and the oral statement to OPS, she recalled how that particular escort actually occurred.  (Doc. 18-2, p. 56).  Defendant had not "fabricated a self-serving story in an effort to avoid accountability," as Plaintiff alleges.  And Defendant made no continuing effort

to adhere to the erroneous interrogatory response and no effort to claim that the prior statements were error.  Defendant in her deposition took accountability for the fact that she incorrectly recalled what occurred.  She took accountability for how and why she conducted the shower escort as she did.  Defendant's incorrect recollection did not render her integratory response *not* "true and correct to the best of [her] knowledge, information, and belief," at the time she provided the response.  Defendant did not commit perjury, and Plaintiff has not shown otherwise.

Under Rule 26(e), a party must supplement responses to interrogatories and other discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Under applicable law, if a party fails to provide the information required by Rule 26(e), "the party is not allowed to use that information to supply evidence on a motion, at a hearing, or at a trial," unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)."  Fed. R. Civ. P. 37(c)(1).

Plaintiff began by asking this Court to strike Defendant's Answer, but argued for this Court to enter a default judgment in her favor.  Both are unwarranted.  As noted above, Plaintiff offers no support for her contention that Defendant's Answer denials are false, other than claiming that Defendant's interrogatory response was a lie.  But again, Defendant's interrogatory response was not related to the alleged false denials from the Complaint.  An entry of default

judgment "represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). But Plaintiff has not cited any cases showing that incorrect interrogatory responses, such as here, are sanctionable as she requests. And Plaintiff has not shown bad faith or that sanctions are warranted.

First, there has been no misconduct by Defendant or her counsel. Plaintiff's Initial Disclosures did not include Defendant's prior statements, so defense counsel did not serve Defendant's responses while in possession of Defendant's statement through Plaintiff's Initial Disclosures, as Plaintiff alleges. Notably, to have submitted the interrogatory response while knowing the contents of Defendant's witness statements would not serve Defendant's interest in any way. What good would it do to knowingly serve an interrogatory response that differed from the written and recorded statements that were certainly discoverable? The logical explanation (and what actually occurred as Defendant explained in her deposition) is that the interrogatory response was given after Defendant had been separated from GDC for nearly two years and without the benefit of Defendant or her counsel having reviewed the 2022 witness statements and recorded interview. When Defendant served her interrogatory responses on April 29, 2024, undersigned certainly did not know of Defendant's prior statements and Defendant had not reviewed or been refreshed by any documents held by the GDC.

Next, almost simultaneously with Defendant's April 29, 2024, interrogatory response, all parties received Defendant's prior written GDC witness statement from GDC (April 30, 2024) and soon thereafter the OPS oral statement from GDC (June 27, 2024). The erroneous information was made known during the discovery process. And Plaintiff thus had great incentive and ample time to depose Defendant about the inconsistency, which she did, or

conduct otherwise necessary discovery such as additional interrogatories or requests for admissions, which she chose not to do.

Finally, there is no harm to Plaintiff from Defendant's failing to supplement erroneous information that was otherwise made known during the discovery process. For starters, Defendant obviously will not proffer her incorrectly recalled version of events as evidence on a motion, at a hearing, or at a trial, beyond now having to address and explain how and why she developed the incorrect recollection and how that incorrect recollection is not a basis for liability. Plaintiff argues that Defendant's erroneous interrogatory response relates to the "pivotal or 'linchpin' issue in the case." (Doc. 18, p. 12). But this is simply not true. Plaintiff's action alleges deliberate indifference to safety. The pivotal or linchpin issue in such a case is not simply what action an official took or did not take. But rather, whether that official acted with "subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) quoting *Farmer v. Brennan*, 511 U.S. 825, 828, 839 (1994). This inquiry requires that a plaintiff show that a defendant was actually subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—that is more than just about whether Defendant Butler handcuffed both inmates or only one. *Id.* Simply stated, as shown in Defendant's motion for summary judgment, her action of cuffing only Williams on the shower escort as shown by her 2022 witness statements and recorded interview and returning him to the same cell that he had occupied with Bivens for twenty days without incident, are not evidence of deliberate indifference (which is, of course, all the more reason why there would be no logical reason to manufacture a story that was different from the 2022 statements). Plaintiff also argues that "[o]n the facts presented here, no lesser sanction [than default judgment] would sufficiently address the culpability of [Defendant's] conduct or the resulting prejudice to [Plaintiff]." (Doc. 18, p. 12). Had Plaintiff truly believed

Defendant acted with culpability or caused prejudice to Plaintiff, Plaintiff would have immediately addressed this contention to the Court with a motion, rather than addressing it to Defendant and insurers with the settlement demand. Further, as discussed above, there has been no showing of misconduct or bad faith and certainly no resulting prejudice or harm to Plaintiff. On the contrary, Defendant's incorrect recollection is of some benefit to Plaintiff because it can be used for impeachment purposes, should there be a trial in this case.

Additionally, Plaintiff asks this Court to compensate Plaintiff for "the expenses and attorneys' fees required to investigate Butler's misconduct, prepare this Motion, and obtain relief from the Court through any hearing or other related proceedings." (Doc. 18, p. 10). Plaintiff has not shown that Defendant's incorrect interrogatory response was made with the deliberate intent to lie or mislead. Moreover, Plaintiff has not alleged what great investigation of Defendant's conduct was required or conducted. Plaintiff clearly recognized the glaring inconsistences the moment she read Defendant's interrogatory response, but Plaintiff did not serve additional discovery requests to Defendant after recognizing the inconsistencies and Plaintiff did not consult undersigned counsel about the inconsistencies, preferring instead to use them for litigation advantage. Plaintiff simply deposed Defendant, which surely she would do even in the absence of an inconsistent interrogatory response. Plaintiff's motion is meritless, and Defendant should not be levied the expense thereof.

## C. Plaintiff Has Not Shown Spoilation

While Plaintiff's motion for spoliation sanction is directed to the GDC, Plaintiff asks this Court to impose upon GDC the non-monetary sanction of "informing the jury that GDC reviewed the video and had a legal obligation to preserve it, but instead destroyed it." (Doc. 18, p. 19). But GDC is not a party to this action, so any trial herein would be against Defendant Butler. Such a

jury instruction in a trial against Defendant Butler would be improper. "Spoliation is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation.'" *Stanfill v. Talton*, 851 F. Supp.2d 1346, 1361 (M.D. Ga. 2012) (quoting *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009)). The party seeking sanctions "must prove that the missing evidence existed at one time; that the alleged spoliator had a duty to preserve the evidence; and that the evidence was crucial to his case." *Id.* (citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011)).

Defendant begins by challenging the cruciality of the non-existent video to Plaintiff's case. Despite Plaintiff's contentions/suggestions, the killing was not captured on video. The OPS summary narrates what was depicted on the video—that Defendant escorted Williams back to the cell, she put him in the cell, then it appeared she saw him getting attacked, she moved to make a radio call, she and another officer returned and the other officer talks into the tray flap. The video did not capture the killing because that happened inside the cell. The video, as it was narrated, is more crucial to Defendant's case, it gives the exact same information Defendant gave in her witness statements—all exactly as she described it.

Next, based on Plaintiff's own motion, Defendant Butler is not the alleged spoliator and had no duty to preserve the evidence. And Plaintiff does not allege that Defendant Butler somehow had some duty or ability to preserve the evidence. Plaintiff's alleged spoliator, GDC, is a non-party to this action. Rule 37(e) provides:

> (e) If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

    (A) presume that the lost information was unfavorable to the party;

    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1) and (2). The Rules clearly apply to parties to an action. Yet, incredibly, the motion asks for sanctions to be levied not just against the GDC, but effectively against the sole defendant in this case, all based *not* on any conduct of Defendant Butler or her counsel but instead on the spurious assertion that "[t]his instruction is necessary to explain the video's absence to the jury and to negate the incentive that GDC otherwise has to destroy video evidence of its employees' culpability." (Doc. 18, p. 19). Plaintiff knows that a jury instruction on spoliation of evidence raises a presumption against the spoliator. *Flury*, 427 F.3d 939 at 945. And Plaintiff knows that a jury would easily confuse the duties of and presumptions regarding GDC with those of Defendant Butler. But Plaintiff also knows that such a presumption raised against GDC, a non-party to the action, in a trial of Defendant Butler, the sole defendant to the action, would be improper and not permitted by controlling law. The sanction requested to be imposed is so extreme that Plaintiff has not even offered support for it in law. There are no lawful grounds to prejudice a party for the actions of a non-party agency, in circumstances such as presented here.

## Conclusion

Plaintiff's motion is vexatious, it is brought for litigation advantage and not to correct an abuse or misuse of the litigation process, and should be rejected for what it is – a desperate try to save a case that cannot survive based on the record as established after thorough discovery. For

all of the reasons stated herein, Defendant respectfully asks that Plaintiff's Motion for Sanctions

against Defendant Butler (Doc. 18) be denied.

Respectfully submitted, this 10th day of February, 2025.

|                                                    | CHRISTOPHER M. CARR<br>Attorney General                | 112505 |
|----------------------------------------------------|--------------------------------------------------------|--------|
|                                                    | LORETTA L. PINKSTON-POPE<br>Deputy Attorney General    | 580385 |
|                                                    | ROGER A. CHALMERS<br>Senior Assistant Attorney General | 118720 |

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

SHELLEY T. MILTON
Georgia Department of Law
40 Capitol Square, SW
Atlanta, Georgia 30334
T: (404) 458-3620
F: (943) 200-4291
Email: smilton@law.ga.gov

*/s/ Shelley T. Milton*
SHELLEY T. MILTON                   769415
Assistant Attorney General

**<u>CERTIFICATE OF SERVICE</u>**

I do hereby certify that I have, this day, filed the foregoing **DEFENDANT BUTLER'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record who are registered to use the CM/ECF system.

I further certify that I have mailed by United States Postal Service, postage paid, the foregoing document to the following non-CM/ECF participant:  NONE.

This 10th day of February, 2025.

/s/ *Shelley T. Milton*
SHELLEY T. MILTON      769415
Assistant Attorney General

- 14 -