# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | | |
|---|---|---|
| HALEY MACKRELL, *as parent of* M.T.M, *surviving child of* HAKEEM WILLIAMS, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 7:24-cv-00007-HL |
| v. | ) ) ) | |
| ANGELA BUTLER, individually, | ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS

Plaintiff Haley Mackrell hereby files this reply in support of her Motion for Sanctions against Defendant Butler and non-party GDC.

### I.  Butler's "Faulty Memory" Defense Is Implausible and Contradicted by the Record.

Defendant's core argument—that she simply misremembered events when providing false interrogatory responses—strains credulity and is contradicted by the evidence. This was not a minor incident that could be easily forgotten. Defendant Butler witnessed an inmate being murdered as a direct result of her own policy violations, was reprimanded for those violations, and met personally with the Warden about the incident. Her claim that she "fixed in her mind" an entirely different version of events that coincidentally absolved her of responsibility is implausible on its face. Indeed, in the **same interrogatory response,** Butler remembered and provided other accurate details about the Incident, including that she "immediately began to

1

call a code on the radio" when the incident began, and that she "had to step away from the cell and go up the steps in the dormitory because I did not have a good radio signal." The only facts she misrepresented, and now claims to have forgotten, were the inculpatory facts.

Butler certainly recalled those facts at the time, and they had consequences that would have cemented them in her memory. Within days of the incident, she gave detailed written statements admitting she had only one set of handcuffs and failed to restrain both inmates. She repeated these admissions in a sworn written statement weeks later. She then received and acknowledged a formal reprimand explicitly citing her failure to follow proper handcuffing procedures. These contemporaneous admissions of her policy violations make it impossible to credit her claim that she genuinely believed, when asked under oath two years later, that she had "conducted the escort in the usual manner" with both inmates cuffed.

Defendant Butler also gave false responses in her Answer on other topics — answers that cannot be explained by faulty memory. She denied that she "had actual subjective knowledge of the risk of violence that would result from leaving one incarcerated man in a cell cuffed and the other uncuffed." (*Compare* Doc. 1, ¶ 13, with Doc. 2, ¶ 13.) She denied that she "had been specifically trained on the risks of leaving one cuffed man in a cell with an uncuffed man, including the risk of serious bodily injury or death from violent attack." (*Compare* Doc. 1, ¶¶ 14-15, with Doc. 2, ¶¶ 14-15.) She denied that she knew there was a substantial problem with contraband

2

knives in Valdosta State Prison. (*Compare* Doc. 1, ¶ 16, with Doc. 2, ¶ 16.) She denied having sufficient knowledge to admit or deny whether the prison was understaffed and whether inmates in the prison possessed shanks and knives. (*Compare* Doc. 1, ¶ 29, with Doc. 2, ¶ 29.) The admissions Butler made in her deposition show that **all** of these responses were false. *See* Doc. 18-2, pp. 51-52 (admitting that she knew, and was specifically trained, that it would create a risk of injury or death to lock a cuffed man in a cell with an uncuffed man); *id.*, pp. 81-82 (admitting that she knew men in the prison possessed contraband knives, including large prison-made weapons that Butler termed "machetes"); *id.*, p. 81 (admitting that the way Valdosta State Prison was run was "horrible," that the prison "was not properly staffed at all," and that guards "did not have proper equipment at all"). So Butler denied receiving training as to the risks of violating cuffing procedures when she filed her Answer; then claimed in her Interrogatory Responses to have **complied** with that same training; and now asks the Court to believe that she simply forgot that her failure to comply with that same training resulted in the only death she ever witnessed at Valdosta State. That strains credulity beyond the breaking point.

## II.    The False Interrogatory Response Was Not an Innocent Mistake.

Defendant argues that Butler's false interrogatory response cannot constitute perjury because she subjectively believed it was true at the time. But this ignores both the implausibility of her claimed belief and the level of detailed fabrication in her responses. Butler did not merely fail to recall certain details—she affirmatively invented an elaborate alternative narrative in which she followed proper procedures

3

*perfectly*. Her response included specific false details about cuffing both inmates, the sequence of events, and even fabricated dialogue. This was not a product of confusion or faulty memory.

Butler contends that she had no motive to lie, because she must have known her prior statements would eventually come to light. Inconsistently, however, she also contends that she **did not know** about those prior statements until they were produced by GDC in response to Plaintiff's subpoena. Doc. 22, p. 8. That is her excuse for the inconsistency between the prior statements and her interrogatory responses. *Id*. When Butler swore to those responses, either she knew about her statements to GDC, or she did not. She cannot have it both ways.

At any rate, Ms. Butler did not need to rely solely on her memory to know that her interrogatory responses were false when she served them. Plaintiff's initial disclosures, served March 25, 2024, included Butler's personnel file. Doc. 18-5. Butler objects that her sworn statement was redacted; but other documents containing the same information were not. These documents included a proposal of adverse action, which stated: "On February 28, 2022 a cell door in [redacted] was opened by Officer Angela Butler without placing handcuffs on the inmate inside the cell. As a result of not being cuffed, the inmate was able to strike the cuffed inmate resulting in his death." Doc. 18-5, p. 24. They also included an Employee Counseling – Performance Report, which described the incident this way:

> On Feb. 28, 2022, Officer Butler fail[ed] to handcuff both inmates in cell [redacted] while running showers. All inmates must be always restrained when the cell door is open in the lockdown units. This is to include restraining both inmates, if they are two inmates assigned to the cell. This resulted in the

uncuffed inmate causing the death of the handcuffed inmate. You have been briefed on the importance of handcuffing both inmates in all lockdown areas.

Doc. 18-5, p. 26.

Also included in the personnel file was a written Letter of Reprimand to Defendant Butler from Regional Director Benjamin Ford, dated March 30, 2022. Doc. 18-5, p. 28. Defendant **signed** this document to indicate that she received it. *Id.* The Letter of Reprimand describes the incident in this way:

> On this date while working in [redacted] building, you opened a cell door in [redacted] without placing handcuffs on the inmate inside the cell. As a result of not being cuffed, the inmate was able to strike the cuffed inmate resulting in his death. You created a dangerous situation for yourself and for the inmate. In the future, you are not to deviate from the Standard Operating Procedures on properly securing an inmate.

*Id.* The handwritten words, "Rescind this Reprimand," do appear at the top of this document; but there is no evidence as to who wrote this instruction or whether it was followed. At any rate, the employment consequences that flowed from the reprimand are irrelevant for present purposes. Butler's signature on the document demonstrates that she received it at the time. And even if she had not, she received it when she was served with Plaintiff's Initial Disclosures. Even if Defendant had somehow forgotten that she caused a man's death and was reprimanded for it, the documents that she undisputedly had in her possession **before** serving her interrogatory responses were more than sufficient to refresh her recollection.

### III.    Defense Counsel's Role Does Not Excuse the False Response.

Defendant emphasizes that defense counsel did not have some of Butler's prior statements when serving the interrogatory responses. As an initial matter, this is

5

irrelevant to Butler's own culpability for providing false sworn testimony. Butler *knew* the underlying facts, and should have known the content of her own prior statements and admissions, regardless of what documents her counsel possessed. But the truth is that defense counsel had ample reason to know that Butler's account was not true. As demonstrated above, Plaintiff's initial disclosures contained numerous documents that reflected what really happened. And this is quite apart from the fact that defense counsel is the Georgia Department of Law, which also represents GDC. The State cannot plead ignorance of facts that it could have "known" by simply taking a set of documents out of one file and putting them into another. And if Butler's counsel had access to the information, so did Butler. This argument fails.[1]

### IV.   The False Response Goes to the Heart of the Case.

Defendant attempts to minimize the significance of her false responses by arguing that they do not relate to the "pivotal issue" of deliberate indifference. To the

---

[1]   In violation of Federal Rule of Evidence 408(a), defense counsel improperly references and characterizes Plaintiff's settlement communications, stating that "six days later on November 18, 2024, Plaintiff sent a 30-day letter demanding $6.5 million dollars, claiming that Defendant had lied and that meant she was liable for Inmate Williams' death." (Doc. 22, p. 3).

Settlement communications are confidential precisely to encourage frank discussions without fear that offers or demands will later be used against a party in litigation. Defendant's disclosure serves no legitimate purpose permitted under Rule 408(b)'s exceptions and appears designed solely to portray Plaintiff in a negative light to the Court. The timing and amount of Plaintiff's settlement demand is entirely irrelevant to whether sanctions are warranted for Defendant's false sworn testimony.

Defendant's willingness to violate evidentiary rules in this way further demonstrates the need for meaningful sanctions. The Court should disregard these improper references to settlement communications.

contrary, they plainly do. Butler affirmatively represented that she cuffed both inmates during the incident, and falsely stated that she believed Bivens must have slipped out of his cuffs. She created a false narrative in which she had two pairs of cuffs, and used them according to GDC policy. None of that was true, as she now admits. And her false statements were made in a context where she had already falsely denied, in her Answer, that she had been specifically trained on the risks of leaving one man uncuffed and locking him into a cell with a cuffed man. She also had falsely denied knowing that the prison had problems with understaffing or with men hiding shanks in their cells, when the fact was that she knew the prison was horribly understaffed and that some of the men had what she termed "machetes." Butler's false testimony was a direct attempt to avoid liability by fabricating a version of events in which she followed all safety protocols. Her motive was clearly to gain a tactical advantage in the litigation. Only sanctions can deter such misconduct.

V.   **Sanctions Should Issue Against Interested Non-Party GDC.**

The Georgia Department of Corrections has failed to file any response opposing Plaintiff's motion for sanctions regarding its destruction of crucial video evidence. GDC's silence is particularly telling given the serious nature of the allegations—that it deliberately destroyed video evidence concerning a homicide despite: (1) having an independent duty to preserve such evidence, (2) receiving a specific preservation notice from Plaintiff's counsel, and (3) knowing the video would be relevant to both civil and criminal proceedings. GDC's failure to even attempt to explain or justify these actions only reinforces that sanctions are warranted.

Moreover, GDC's non-response means the record is uncontested that:

- GDC personnel viewed the video evidence on the date of the incident;

- The video showed key events prior to Williams's death;

- GDC failed to preserve the video despite knowing its importance;

- This was part of a pattern of failing to preserve video evidence in cases involving inmate deaths; and

- GDC received timely notice of its duty to preserve the evidence.

GDC objects that the video did not show the actual murder, but only the surrounding circumstances. Even that would make it relevant to both the criminal and civil cases. But of course, there is no way to prove exactly what was on the video, because GDC destroyed it. GDC should not be allowed to benefit from its misconduct by making unproven assertions about the video's contents. And benefit it would. Though GDC itself of course enjoys Eleventh Amendment immunity, the State stands to indemnify Butler for any judgment. An interested non-party like GDC should not be allowed to spoliate evidence without consequences.

Given these unopposed facts and GDC's waiver of any defense, the Court should grant both the requested monetary sanctions and the adverse jury instruction regarding GDC's destruction of the video evidence.

## VI.    Lesser Sanctions Would Be Insufficient.

Finally, the response brief argues that striking the answer would be too severe a sanction. But this ignores the fundamental nature of Butler's misconduct. She did not merely fail to disclose information or make a careless mistake—she provided

intentionally false sworn testimony on a central issue and maintained that falsehood for months. This sort of calculated dishonesty strikes at the heart of the judicial process. Allowing the case to proceed normally after discovery of such misconduct would signal that parties can attempt to lie their way out of liability with little consequence if caught.

## CONCLUSION

For all these reasons, and those stated in the original motion, Plaintiff respectfully requests that the Court:

1. Strike Defendant Butler's answer;

2. Impose monetary sanctions against GDC in an amount sufficient to deter future spoliation of evidence;

3. Direct that the jury be instructed that GDC had a duty to preserve the video evidence of events prior to Williams's death but failed to do so; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 24th day of February 2024,

*/s/ Leighton Moore*
Leighton Moore
Ga. Bar No. 520701
The Moore Law Firm PC
1819 Peachtree St. NE Suite 403
Atlanta, GA 30309
404-285-5724
leighton@moorefirmpc.com

/s/ Samantha Funt
Samantha J. Funt
Ga. Bar No. 943783

9

MITCHELL SHAPIRO
GREENAMYRE & FUNT LLP
881 Piedmont Ave NE
Atlanta, GA 30309
404-812-4747
404-812-4740 (fax)
sam@mitchellshapiro.com

*Counsel for Plaintiff*

10

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing using the CM/ECF system, which will send notification of filing to all counsel of record.

/s/ *Samantha Funt*
Samantha Funt
Ga. Bar No. 943783